Curia, per
Butler, J.
This is an action of trover, which can only be maintained by shewing title in the plaintiff. The title of the plaintiff to any of the personal estate of his intestate, is derived not from the intestate himself, but from the Ordinary, under the authority of the laws of South Carolina. His rights, as the legal representative of the deceased, must be referred to his letters of administration, and can be alone exercised within the jurisdiction of the power that conferred them. The proposition which he contends for is, that he has a right to bring his action against any individual, while in this State, for any demand, liability or personal estate, no matter where contracted, incurred, or where the property may, at the time, be situated. The whole question turns upon this point — whether the defendant is liable to account to the plaintiff for property which he acquired possession of and holds within the jurisdiction of another government?
It is a mistake to suppose that the plaintiff is invested with all the rights and power which his intestate could have exercised over his own property in his lifetime. The owner of personal property, while alive, has always the possession, or the right of possession, to such property, in whatever part of the civilized world it may be situated. His possession follows his title, and is so far connected with it, that it may be transferred by deed or assignment, without the special authority of the law of the place where it is situated. Death is an event which changes the character of the title so far as to give different governments in which moveable property may be left, a right to confirm, confer and Control the title to it. The testament of the deceased will, in general, be respected and confirmed as *118 the title of an executor appointed by it. The executor, deriving his authority from the will, must have it proved in every jurisdiction, before he will be permitted to assert his legal rights under it. The testament being established under the lex domicilia of the testator, will be regarded every where else, more as a credential, than as the original authority of the executor. Judge Story, in his Conflict of Laws, 421, recognizes as a correct principle, that the title of an executor is a good title jure gentium, and when established in the manner and by the process prescribed by the law of the place where it is sought to be exercised, ought to be held of universal obligation. Even such a title as that will be inoperative, until it is confirmed by the authority of the country in which it is to prevail. In this particular, there is a resemblance between the title of an administrator • and an executor — that is, neither can be asserted, except by the comity of the country in which the property may be found. In another respect, there is a material distinction between them. An administrator derives, ab initio, his title from the laws of the country in which he may have occasion to exercise it.
Upon this subject, Judge Story remarks — “In regard to the title of administrators, derived from a grant of administration in the country of the domicil of the deceased, it is to be considered that title cannot de jure extend, as a matter of right, beyond the territory of the government which grants it, and the moveable property therein. It would follow from this, that as to property in foreign countries, a new title would have to he conferred, or the former title recognized and established by another government. To change the proposition, the title conferred by the laws of the domi-cil, is circumscribed by the jurisdiction of the government from which it was derived, and cannot attach to the property in another jurisdiction. There may be as many administrators as there are jurisdictions that grant them. Every new administration is to be treated as merely ancillary to the original administration, so far as it regards the collection of the effects and the proper distribution of them. Still, however, the new administration is made subservient to the rights of creditors, legatees and distributees *119 within the country; and the residuum is _ transmissible to the foreign country only when the final account has been settled in the domestic tribunal, upon equitable principles adopted by its laws.” Story Confl. Laws, 423.
As a case full of instruction on these propositions, I notice particularly that of Dawes vs. Head, 3 Pick. 128. The judgment of Chief Justice Parker in that case evinces a just regard to the rights, interest and liability of all the parties concerned, and lays down enlightened rules for their observance and government. Where administrations are granted under the laws of different countries, they are entirely independent of each other, and there is no legal privity between the administrators in the performance of the duties that devolve on them. Moveable property, situate in every country, liable to be administered, is subject to be controlled or modified, as every nation may think proper, with reference to its own institutions, and its own policy, and the rights of its own citizens. . Administrators duly appointed, in general, represent these interests and purposes. In some countries, and I believe it is the case now in Louisiana, when one dies intestate, his effects are immediately taken charge of by a local Judge for the purpose of administration. And every government has the right to do the same thing. Such regulations, governed by internal comity,* cannot effect -the rights of succession. They will depend on the lex domicilia, and not the lex rei sitae — • the latter affecting only the rights of iocal creditors and legatees. It would seem, from well acknowledged authority, that ■ these are not bound to look to the domiciliary administrator for satisfaction of their demands, but if they think proper, may resort to the ancillary administrator for such satisfaction as they are entitled to within his jurisdiction. Although original and ancillary administrators may be regarded as so many agencies, for a common purpose, 'ultimately, to wit — -the administration of the estate committed to them, subject to the liabilities of their intestate, under the local laws, and to be answerable to his surviving representatives, entitled to cláim under the lex domicilia, still, each administrator must have a perfect title in himself, to enable him to perform his functions in relation to the *120 property situate in his country. Their titles not only have a separate character, but may be adversary in the enforcement of rights under them; and in case of insolvency, this may frequently be the case. In one country, all debts stand in an equal order, and all creditors are to be paid pari passu. In another country, perhaps lying adjacent, certain debts are entitled to a priority of payment. In many of the States, all debts due to individuals possess an equal rank, whilst in our State, judgment and bond debts are preferred to those on simple contract. In a contest between an original and ancillary administrator, for a particular piece of property, it would be frequently very important to ascertain in whom the title is vested, so far as creditors are concerned. In one instance, the proceeds of sale would go exclusively to one privileged creditor, whilst in the other, they would be distributed among all, pari passu. It would seem to follow, that two administrators could not, at the same time, have a title in the same piece of property, but that each must have a title exclusive of the other ; and in this respect, administrators but represent the laws of different sovereignties. Their titles depend on the lex rei sitae, and when once acquired, they should be respected every where else. If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased there situated, into his possession, so that he has acquired the legal title thereto, according to the laws of that country, if that property should afterwards be found in another country, or be carried away and converted against his will, he may maintain a suit for it there, in his own name ; for he is, to all intents and purposes, the legal owner thereof. And where property has been received by a foreign administrator abroad, and is afterwards remitted here, an administrator appointed here could not assert a. claim to it, either against the person- in whose hands it might happen to be, or against a foreign adminis-' trator himself. In support of this proposition, see the authority quoted by Judge Story, 434. These remarks apply to tangible property, arid cannot affect personal liabilities growing out of torts committed in the lifetime of the intestate. As it regards these, they would seem to be *121 inseparable from the person incurring them; As they are not the subject of actual dominion and'seizure, they must be regarded as something transitory in their nature; and where one has converted personal property in the lifetime of the intestate, I can see no reason why he should not be held answerable to the administrator, according to the laws of the place in which there has been a conversion ; and where there is but one administrator, he would have a right to bring an action against any one coming into his jurisdiction, who may have been under any previous liability to his intestate. The liability, in such case, attaches to and follows the person of the wrong-doer. In matters of contract, the evidence of the debt will generally indicate the right of the party holding it, to bring the action. Where there is no conflict of administrations, there can, in such case, be little or no difficulty. I mean, on questions of mere liability for debt or damages, and where the title of specific property is not involved.
The plaintiff has rested his right of action mainly on the ground that he has a right to receive debts from any one, ubicunque facerunt, and that his ' receipt would be a good discharge against the world.
As to the payment of debts by debtors actually domiciled in different countries, there is much difficulty arising out of a conflict of decisions. It seems to be generally understood, that a payment made to an original adminis-^ trator, would be good against the claim of other administrators, subsequently appointed in the places where the debtor resided ; and that payment would be a good bar to an action brought by a foreign administrator for the same debt. From this it has been mainly contended, in the case before the court, that a recovery here would be a good bar to an action hereafter to be brought in North Carolina for the conversion of the same negroes ; or that an accord and satisfaction with the present plaintiff would be an effectual discharge of the defendant against all future liability. After a fair and full review of all the authorities on the subject, Judge Story thus expresses himself — “ There is much reason, however, to doubt whether the doctrine be maintainable fo' the extent which the proposition has been *122 sometimes understood to justify, that is to say, so as to apply to a clebt due by a debtor who at the death of the creditor is actually domiciled in and owes the debt in a foreign country where no administration is taken out. Suppose an administration should afterwards be taken out in the foreign country, would it be any bar to an action brought by the foreign administrator against the debtor for the same debt, that the debtor had already paid it to another administrator, who had no right to demand it in right of his original administration — and who, therefore, might be deemed a stranger to the debt 1 Suppose a contest to arise between the original administrator and the foreign administrator, in relation to the administration ot the debts so received as assets of the deceased, could the original administrator retain it against the will of the foreign administrator'?” “It seems difficult,” says Judge Story, “to answer these questions in the affirmative, without shaking some of the best established principles of international law on the subject.” I will not say that if the defendant, in the case under consideration, had been compelled by the judgment of the court to deliver up to the plaintiff the property in question, it might not be a sufficient bar to any action that may hereafter be commenced against him by an administrator in North Carolina, where he has the property, and where he is actually domiciled. It is not necessary to go so far — nor to say that a voluntary delivery to the plaintiff would not, by the comity of nations, be regarded as a discharge from future liability. He takes the ground, that he is in the possession of the negroes in North Carolina, and is not bound to deliver them to any one, or to be answerable to any one, but the legal administrator, and it is very clear that the plaintiff is not the legal administrator. And how can it be contended, that a conversion has been committed by the defendant against his rights ? The possession of the defendant must be presumed to be lawful. He holds the property subject to the laws of North Carolina, and, perhaps, subject to the claim of an authorized administrator in that State. Indeed, it may be, that he is administrator himself — and in neither point of view can he be divested of his possession, or his- title, by one having no title in himself.
*123 It is an abuse of terms to say, that there has been a conversion, unless the possession is unlawful; and above all to say so, in respect to one who assumes the rights of an owner in derogation of the laws of another country, or the rights of-those claiming under them. If this action can be maintained at all, it will be in favor of the plaintiff, by virtue of his title, against any one who may happen in North'Carolina to have the possession; of against the ancillary administrator who holds the property for the benefit of foreign creditors. Suppose, then, it were competent for this plaintiff, as the original administrator, to maintain actions for property situated abroad, against any one coming transiently into this State. He would be enabled thereby to bring within the scope of his administration all thé effects abroad, and have them paid out under laws of South Carolina, to the detriment of the North Carolina creditors, and in violation of the laws under which their rights were vested and could be asserted- This would, virtually, make but one administration, and extend the powers of the administrator beyond the jurisdiction that conferred them— and would defeat the soundest principles of international jurisprudence.
Justice, convenience, and strictly legal principles, would forbid such a result. If there has been no administration in North Carolina, all that the plaintiff has to do, is to apply for letters of administration himself, and they will, according to usage, founded in international comity, be granted to him; and then, by one agency, he will be able to comply, with the requisitions of the laws of both countries; that is, to pay the creditors of each, according to their laws, and hold the residue for distribution among the representatives of the deceased, according to the laws of South Carolina. Otherwise, he must administer his own assets, and wait for the surplus to be transmitted from North Carolina, by the administrator of that State. As a familiar illustration of his duty, would it be right that he should have inserted in his inventory any property beyond the limits of South Carolina, subject to the claims of creditors or legatees against himself'? As he is not bound to charge himself with such property, it is because he has no- *124 title in it. His rights and liabilities are co-extensive, and where he has no title, he has no right of action. According to these views, the circuit decision was correct. The motion to set aside the nonsuit, is, therefore, refused.
Richardson, O’Neall, Evans, and Frost, JJ. concurred,